Filed 6/24/14  In re A.T. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.T., Person Coming Under the Juvenile Court Law. | B250532 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK74200) |
| Plaintiff and Respondent, | |
| v. | |
| N.F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Anthony Trendacosta, Juvenile Court Referee.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Tracey F. Dodds, Deputy County Counsel for Respondent.

_____

Mother N.F. appeals from the juvenile court's exit orders regarding visitation with daughter A.T. after the court terminated its dependency jurisdiction and gave father K.T. sole legal and physical custody of the child.  We affirm those orders.

## FACTS AND PROCEDURAL HISTORY

In November 2012 we affirmed a juvenile court order placing seven-year-old A.T. with her father after the court sustained an amended petition (Welf. & Inst. Code, § 300) filed by the Los Angeles County Department of Children and Family Services (DCFS) alleging that A.T. was a dependent of the court because mother had been coaching the minor to falsely accuse father of sexually abusing her when in fact the abuse was committed by mother's nephew.  (*Los Angeles County Dept. of Children and Family Services v. N.F.* (Nov. 29, 2012) [nonpub. opn.].)  The court had previously taken jurisdiction of A.T. in 2008 after father was wrongly blamed for sexually abusing the child, finding that A.T. had been a victim of sexual abuse, but that someone else in the household had been the perpetrator.[1]

In May 2013 the juvenile court terminated jurisdiction over A.T. and placed her with father, granting him sole legal and physical custody of the child.  The court entered exit orders regarding monitored visitation by mother that ordered mother to pay for the costs of the monitor.  The court did not specify the frequency and duration of her visits.

Mother contends the juvenile court erred because:  (1)  it cut her off when she tried to argue at the hearing; (2)  there was no showing she had the ability to pay for a monitor; and (3)  the order failed to specify how often she was allowed to visit the minor.[2]

---

[1]    This condensed version of the facts comes from our prior decision in this matter. As for the facts that give rise to this appeal, we have distilled those to address the issues raised by mother.

[2]    Mother does not contest the termination order, or the apparent basis for granting father sole legal and physical custody of the minor:  mother's failure to cooperate with DCFS; her apparent false statement that she discontinued therapy because her therapist

1.      *The Court Did Not Stop Mother From Arguing the Exit Orders*

Mother contends the juvenile court did not permit her to respond to the court's tentative ruling concerning visitation.  She bases this on the following exchange:

"[MOTHER]:  Okay, I wasn't really done.

"[THE COURT]:  Well, Ma'am, you're done as far as the court's concerned.

"[MOTHER]"  Okay.  Thank you.

"[THE COURT]:  We're back in open session. . . .  The Court's tentative from the 15th is the – will be the order."

These comments must be placed in context with the events that preceded them.  When the hearing started, the court noted that mother had filed a request to renew a restraining order against father.  Although mother had counsel, the court allowed her to argue the restraining order herself because mother applied for that order on her own without the assistance of counsel.  After hearing argument from the parties, the court denied the request to renew the restraining order.

When the hearing started mother also said she wanted to bring a *Marsden*[3] motion to replace her lawyer.  After the court denied mother's request for a renewed restraining order it went into closed session with mother and her lawyer so mother could argue her *Marsden* motion.  After the court denied that motion, counsel for the parties, along with father, returned to the courtroom.  As the trial court announced the presence of counsel for DCFS, mother said, "Can I ask you a question, sir?"  The trial court asked what the

was ill; her 2012 false accusation of sexual abuse by father, leading to an unnecessary sexual assault exam of the minor; and the fact that even though the minor loved her mother and wanted to live with her, she was also satisfied living with father, who by all accounts was giving her proper care.

[3]      This was a reference to *People v. Marsden* (1970) 2 Cal.3d 118, which holds that criminal defendants represented by appointed counsel may move to replace counsel if the lawyer is not adequately representing them.  Because  parents have a statutory and due process right to competent counsel, *Marsden*-type hearings are permitted in dependency court.  (*In re M.P.* (2013) 217 Cal.App.4th 441, 455.)

question was, followed by mother's statement that she was not really done, along with the remainder of the exchange quoted above. This was followed by the trial court's statement that it "was back in open session."

It appears to us that the juvenile court allowed mother to first argue regarding the restraining order and her *Marsden* motion, after which it intended to conduct the hearing on the termination and exit orders. Viewed in this context, mother's request to ask a question and her statement that she "wasn't really done" indicate that mother wanted to make further argument regarding the just-concluded *Marsden* hearing. Therefore, when the court said that mother was "done as far as the court's concerned," and then said "we're back in open session," it was nothing more than a statement that the court would hear no more argument on the *Marsden* motion – it would have been improper in open court – and would proceed to the termination and exit orders.

At that point, mother's counsel was responsible for arguing on her behalf. When the court said that its previous tentative would become the final order, mother said "okay" while her counsel remained silent and made no objections to the court ruling without argument or the introduction of evidence. We therefore deem the issue waived. (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755.)

## 2.    *Mother Waived Her Challenges to the Visitation Order*

### A.    <u>The Frequency of Visitation</u>

When a juvenile court terminates its jurisdiction over a dependent child, it can make exit orders regarding custody and visitation. Those orders become part of any family court proceeding concerning the same child and remain in effect until they are terminated or modified by the family court. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) The court has the power to determine the right and extent of visitation by a noncustodial parent in a dependency case, and may not delegate that power to nonjudicial officers or private parties. (*Id.* at p. 1123.) A visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place, and

4

manner.  (*Ibid.*)  However, discretion to determine whether visitation will occur at all may not be delegated.  (*Ibid.*)

Mother contends the juvenile court improperly delegated her right to visit the minor by failing to specify how often she was allowed to visit.  We reject this contention for two reasons.  First, the court did not delegate that power to anyone.  Instead, its order was silent on the frequency of visitation.  Second, in May 2012 the court ordered visitation for mother of no less than two to three times a week, with visits to last two to three hours.  By virtue of minute orders stating that all prior orders remained in force and effect, that visitation order was in effect up to and including the ultimate hearing on May 22, 2013.  We believe the court intended to keep that order in place as part of its exit order, subject to later modification by the family court.

Alternatively, we hold that mother waived her objection by failing to raise the point during the hearing.  (*In re Carrie W., supra*, 110 Cal.App.4th at p. 755.)

### B.    Order to Pay for Visitation Monitor

DCFS recommended that mother be allowed monitored visitation with the minor, but said nothing about making mother pay for the monitor.  Instead, the court announced that requirement as part of its tentative ruling at the May 15, 2013 hearing.  Mother contends the juvenile court erred because there was no evidence she could afford to pay for the monitor, or that a paid monitor was required for some special reason and would afford the minor better supervision than would an unpaid monitor.

When the court announced its tentative, it told counsel to "be prepared on that issue" for the May 22 hearing.  Mother made no argument, and presented no evidence on those issues in advance of or at the May 22 hearing.  Instead, mother's counsel remained silent when the final ruling was announced.  We therefore deem the issue waived.[4]  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338.)

---

**4**    Mother remains free to seek modification of the visitation orders through the family court.

## DISPOSITION

The juvenile court's exit orders regarding visitation are affirmed.


                                        RUBIN, J.

WE CONCUR:


        BIGELOW, P.J.


        GRIMES, J.